ANNIE CASEY *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    January 14, 1908. — February 27, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Street Railway, In use of highway, Due care of plaintiff.

A girl nine years of age, in crossing a street in which there was a double line of
street railway tracks, which she had been accustomed to cross at that point fre-
quently every day for two years, saw a car standing on the track nearer her and
a car rapidly approaching on the farther track, and, with an opportunity con-
tinually to see the car on the farther track and having it in mind, she attempted
to cross in front of it after the car nearer her had moved on, thinking that she
had time to get across, if she hurried, and meaning to run if she had to. She
was run into and injured. Her parents often had told her not to take the risk
that she did take. *Held,* that she could not be said to be in the exercise of
any care.

TORT for personal injuries alleged to have been received by
the plaintiff through being negligently run into by an electric
street car of the defendant.    Writ in the Superior Court for the
county of Suffolk dated January 15, 1904.

At the trial, which was before *Stevens,* J., besides the facts
which are stated in the opinion, it appeared that at the time of
the accident the plaintiff was nine years of age, and that the ac-
cident happened on Washington Street, in that part of Boston
which formerly was Brighton, nearly in front of the municipal
court house.    The plaintiff was attempting to cross the street,
going toward the court house from the side of the street opposite,
and was walking fast on her way to school, but was not hurrying,
because she was not late.    Her testimony in direct examination
was: "I did n't step on the rail but I looked both ways; I
looked toward Boston and then toward Oak Square; I saw the
car coming from Boston, and the car that was going into Boston
was standing still, and then it went on and I went behind it.
The car that was coming from Boston was quite a distance away
from me and I thought I had time enough to get across, so I
went across and it struck me before I got across."    In cross-
examination she stated that she could see the car which struck
her, the one going from Boston, before the one going toward
Boston passed from in front of her, and that she saw it several
times before she started upon its track, and that it was going

rapidly, "but I still meant to walk across anyway, run if I had to. . . . I don't think there was anything that prevented my seeing the car that struck me from the time I got to the first rail up to the time that I was struck. Was in plain sight as I came near the track on which it was running. I could see it plainly coming toward me. I could see how fast it was going and I saw that it was going fast. I tried to get across in front of it — that is the way I got hurt. . . . I wanted to get across if I could and I took my chance of getting across in front of it. It did not slow up at all, as it came toward me. It kept coming along just as fast, I could see that. I had been across the street a great many times there, going to and from school, when the cars were coming. Sometimes I had run across in front of cars, not very many, and had calculated my chances whether I could get across ahead or not. I had tried that before and thought I could tell whether I had time enough or not. There wasn't anything else that attracted my attention or anything else that I had to look at. I could give my whole attention to this car. . . . I was giving my whole attention to it. . . . I had been cautioned to look out for cars and cautioned not to run across in front of them. My father and mother had told me not to take chances like that, not to do the very thing I was doing that day."*

In redirect examination, she stated, " I wouldn't have gone on second track, where the Boston car was coming, if I hadn't thought I had an opportunity to get across safely."

Other facts are stated in the opinion.

At the close of the plaintiff's evidence, the defendant requested the presiding judge to rule "that the plaintiff was not entitled to a verdict in her favor." He declined to do so and, the parties agreeing that he assess the damages, he assessed them in the sum of $1,000, the jury returned a verdict for the plaintiff, and the case was reported for the determination of this court, it being agreed that, if the evidence was sufficient to warrant the

---

* The quoted passages from the cross-examination of the plaintiff are taken directly from the record, but it was agreed at the argument before this court that they were not in the language of the plaintiff but in that of leading questions by the defendant's counsel, to which the plaintiff replied " yes," or " no."

jury as a matter of law in finding a verdict for the plaintiff, judgment should be entered for her for the sum of $1,000 and costs, otherwise judgment should be entered for the defendant.

*C. F. Choate, Jr.,* for the defendant.

*M. A. Sullivan,* for the plaintiff.

SHELDON, J.   There was evidence tending to show that the defendant's servants were guilty of negligence in the running of the car that struck the plaintiff, and the only question which need be considered is whether the plaintiff could have been found to be in the exercise of that degree of care which is properly to be expected from a child of her years.   In this respect the case resembles *Stackpole* v. *Boston Elevated Railway*, 193 Mass. 562. The plaintiff knew that the car was approaching her; she thought that she had time enough to cross in front of it if she hurried, and made up her mind to do so.   So she went, apparently with haste, past two men, the witnesses Young and Brogie, who had stopped for this car to pass, stepped upon the rails, and was immediately struck by the car.   She had been going over this place four times a day for about two years, and had become well acquainted with it.   There was some evidence that the gong of the car was not sounded; but this did not affect her conduct, for she had seen the car; she was not misled by the other car's passing in front of it; it was in plain sight to her, with nothing to prevent her seeing it as she came near to the track on which it was running; she could have stopped instantly if she had desired.   The direct cause of the accident was that which she herself assigned in her testimony : " I tried to get across in front of it — that is the way I got hurt."   As in *Madden* v. *Boston Elevated Railway*, 194 Mass. 491, she took her chance; and it does not help her that this was the very chance which her father and mother had often told her not to take.   The case against her is the stronger because, as she also testified, she was not frightened, knew just how the car was coming, and just what the danger was if she got struck.   It is impossible to say that she was exercising any care.   *Holian* v. *Boston Elevated Railway*, 194 Mass. 74, and cases there cited.

In accordance with the terms of the report, judgment must be entered for the defendant.

*So ordered.*