SAMUEL COHEN *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    December 10, 1908. — May 20, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence,* Due care of plaintiff.    *Street Railway.*

One who, upon leaving an electric street car at eleven or twelve o'clock at night,
passes behind it and, as he first comes around to a position from which he can
see along a parallel track in the direction in which the car which he has left
was going, sees a car approaching thereon a good distance away, but which
approaches so rapidly that, when he has passed over the few feet which
separate the two tracks and has stepped on to the track in front of the ap-
proaching car, it is only about two car lengths away, and who then proceeds
diagonally across the track in front of the car with his back partially turned
toward it and without looking again because he does not think there is any
danger, is not in the exercise of due care.

TORT, for injuries received by the plaintiff due to his being
run into by an electric car of the defendant as he was crossing
the street railway track in front of it, having come from behind
a car going in the opposite direction, from which he had just
alighted.    Writ in the Superior Court for the county of Suffolk
dated March 10, 1906.

The case was tried before *Stevens,* J., who, at the close of the
evidence, ordered a verdict for the defendant; and the plaintiff
alleged exceptions.    The facts are stated in the opinion.

*D. L. Smith,* for the plaintiff.

*W. H. Foster,* (*H. S. MacPherson* with him,) for the de-
fendant.

MORTON, J.    The facts in this case lie within a narrow com-
pass.    The evidence comes almost wholly from the plaintiff.
The other evidence was to the effect that there was no slacken-
ing of the speed as the car approached the place of the accident,
that the motorman did not ring the bell or apply the brakes,
and that the car was going at a minimum rate of eighteen to
twenty miles an hour.    The accident occurred between eleven
and twelve o'clock at night on January 27, 1906.    There was
no snow on the ground.    The plaintiff had been working dur-
ing the day and evening, and was on his way to his home on
Alaska Street in Roxbury where he had lived for two years.

He alighted from his car at the place where he usually alighted and with the surroundings of which he was entirely familiar. As to what he did after alighting, the plaintiff testified in substance that he went round the rear of the car to go across the street and as he got clear of the car he looked up and saw the light of the approaching car; that he couldn't say how far away it was, — "it was a good distance," — and he continued crossing to get to the other side; and that, as he was about to step on to the inward bound track, he looked up again and saw the car much nearer than it was before, about sixty or seventy feet away. In answer to a question by the presiding judge he said that the second time that he looked was just after he got on to the inward bound track, and that he quickened his pace a little so as to get across; that he was walking with his back a little bit towards the car so as to get on the crossing and was almost over when the car came along and struck him and broke his leg. On cross-examination he testified that he knew and appreciated the danger that there was of cars coming down on the other side of the car from that on which he got off, and that that was the reason that he looked; that he saw the car coming down and thought that it was at a perfectly safe distance for him to continue, and he walked on with his back partially turned towards the car and when he got to the rail looked again and the car was about sixty or seventy feet away and he continued with his back partially turned towards the car until he was struck. In answer to questions put to him by the presiding judge during the cross-examination, he said that just as he stepped on the track he turned and looked and saw the car sixty or seventy feet away and attempted to cross and did not look after that; and that he "didn't think there was any danger."

We think that the plaintiff was not in the exercise of due care. To step on to a track at eleven or twelve o'clock at night in front of a rapidly approaching car which was a good distance away when he first saw it as he went round the rear of the car that he got off of and which had approached so rapidly that when he had passed over the few feet which separated the two tracks and had stepped on to the inward bound track it was only about sixty or seventy feet away, a little more than two car lengths as was said on the cross-examination, and then to pro-

ceed diagonally across the track with his back partially turned towards the approaching car without looking again because he did not think there was any danger was an act of carelessness and not simply an error of judgment. He saw the car and knew that it was approaching rapidly and the fact that the gong was not sounded could not, therefore, have affected his conduct. It is true that he could properly trust somewhat to the expectation that the motorman would exercise reasonable care, but the time was near midnight and the motorman could not be expected to see him, and he was bound to take proper precautions himself for his own safety. *Tognazzi* v. *Milford & Uxbridge Street Railway*, 201 Mass. 7. We think that the case is governed by *Callaghan* v. *Boston Elevated Railway*, 200 Mass. 450; *Casey* v. *Boston Elevated Railway*, 197 Mass. 440; *Madden* v. *Boston Elevated Railway*, 194 Mass. 491; *Holian* v. *Boston Elevated Railway*, 194 Mass. 74; *Fitzgerald* v. *Boston Elevated Railway*, 194 Mass. 242; *Stackpole* v. *Boston Elevated Railway*, 193 Mass. 562; *Murphy* v. *Boston Elevated Railway*, 188 Mass. 8, and *Mathes* v. *Lowell, Lawrence, & Haverhill Street Railway*, 177 Mass. 416.

*Exceptions overruled.*