MINNIE E. ADAMS vs. BOSTON ELEVATED RAILWAY
COMPANY.

MICHAEL WALSH, administrator, vs. SAME.

Norfolk.   November 11, 1914. — December 30, 1914.

Present: RUGG, C. J., BRALEY, DE COURCY, & CROSBY, JJ.

*Negligence*, Street railway.  *Evidence*, Opinion, Presumptions and burden of proof.

If in the evening two women in order to take a street railway car on the second of
two parallel tracks start to walk across in front of a car which is approaching
on the nearer track and which one of them sees one hundred and fifty feet
away, and this one thinks that they have time to cross and says so to her com-
panion, and the speed of the car then is accelerated and the women continue
to walk toward it, partially facing it, until they are struck by the car before
reaching the nearer track and one of them is killed and the other injured,
upon these facts there is no evidence for a jury that either of the women was in
the exercise of due care.

In an action against a corporation operating a street railway for personal injuries
from being run into by a car of the defendant on the nearer of two parallel
tracks when the plaintiff was attempting to cross in front of an approaching
car on that track to take a car on the farther track, if the plaintiff testifies that
he thought that he had time to cross without injury and that he said so to his
companion, although his judgment, which proved to be erroneous, may throw
some light upon his action, the fact that he formed the judgment does not in
itself constitute evidence of his due care which entitles him to go to the jury,
assuming that there was evidence of the defendant's negligence.

Evidence that no gong or bell was sounded on an approaching street railway car
does not tend to show due care on the part of a plaintiff who was walking toward
the car when it was in plain sight, because the absence of such a warning of
approach could not have affected his conduct.

CROSBY, J.   While attempting to cross Boylston Street at its
intersection with Hammond Street in Brookline, the plaintiff in
the first case and Bridget Walsh, the intestate of the plaintiff in
the second case, were struck by an electric car of the defendant,
which resulted in the death of the intestate without conscious
suffering and in serious injuries to the plaintiff Adams.

Boylston Street, at its intersection with Hammond Street, was
sixty-five feet wide.   The defendant maintained two tracks,
which were nearly in the centre of Boylston Street, the northerly
track being used for outbound cars running from Boston to Brook-

line and other places, and the southerly or inbound track for cars running from Worcester, Newton and Brookline to Boston. Cars usually did not stop at the junction of Boylston and Hammond Streets except on signal. The regular stopping place for outbound cars was at a white post a short distance westerly of the west line of Hammond Street; the stopping place for inbound cars was at a station shed which was at a point about thirty feet easterly of the easterly line of Hammond Street. At the time of the accident, and for two years previously, there was suspended over the inbound track, near the shelter shed, a sign upon which were the words "Run Slowly." There was a similar sign over the outbound track, near the regular stopping place. These signs were for the guidance of the defendant's motormen.

The accident occurred on April 20, 1910, between seven and seven-thirty o'clock in the evening. For a considerable time before the accident these two young women were employed in the family of Thomas T. Baldwin, who lived on the westerly side of Hammond Street, about four hundred feet northerly from Boylston Street and within full view of the crossing. The women were struck by an outbound car. The exceptions recite that no witnesses who actually saw the accident were called by either side; and no one testified to having seen either of the women on the outbound track.

The plaintiff in the first case, Minnie Adams, testified that they intended to go to the Park theatre that evening, and left the home of their employer about seven o'clock; that on arriving at the corner of Hammond and Boylston Streets they left the sidewalk and went diagonally across Boylston Street in an easterly direction, to get an inbound car. She further testified: "Before the accident I saw the car which hit me; we were then about the middle of Hammond Street, almost the middle of Hammond Street, nearer the track than the board walk; Bridget Walsh was very near me; I don't remember on which side of me Bridget Walsh was then; the car was coming toward me down Boylston Street; I saw it was about between the red and green buildings first (shown on plan); . . . I don't remember exactly where the car was that was going in town when I first saw it; I remember seeing the incoming car before the accident." She further testified that she thought she had "plenty of time to cross the

street before the car should get there;" that she started to cross the street and the car hit her and she remembered nothing more. Upon cross-examination she testified' that Miss Walsh was a little ahead of her; that she (Adams) might have been walking fast; that she did not know whether she was hurrying or not, but that she was not running. She also testified that when she saw the outbound car which struck her it was about one hundred and fifty feet back from the corner of the street, and that she spoke to Miss Walsh about having time to cross. The evidence shows that from that time they were facing the oncoming car, although the plaintiff Adams testified that she did not remember seeing or hearing it after she saw it when it was one hundred and fifty feet away.

There was evidence to show that the motorman of this car released his brakes and increased his speed in going across Hammond Street, and that the car then was running between twenty and twenty-five miles an hour.

The medical examiner testified that he examined the car that night after the accident, and that "The post that would be in the rear of the front door at about one foot above the floor level of the car and three feet above the ground was covered with blood and brain matter," and "was six feet four inches from the bumper or bow of the car and nine feet four inches from the end of the front fender." He also testified that he examined other parts of the car and found no other marks connected with the accident, and that from the examination he made of Miss Walsh's body and the further examination he made of the car, it was apparent to him that she had come in contact with the rear post of this door. In his opinion her death was caused by reason of the collision.

So far as appears it was not a stormy night, nor was there anything to distract the attention of the two women or to confuse them in any way as they attempted to cross the street. The plaintiff Adams testified that Boylston Street was the main thoroughfare for express cars that ran between Boston and Worcester; that she knew the cars were in the habit of proceeding along that street at a very rapid rate, and that she had crossed the tracks many times before. She also testified that she saw the lights in the car when she observed it at the distance of one hundred and fifty feet away. The record shows that at the time

of the accident Bridget Walsh was thirty-seven years old, and the plaintiff Adams was thirty-three years of age. They were both intelligent and active, with good eyesight and hearing, and apparently in full possession of all their physical and mental faculties.

The plaintiffs contend that the question whether they were in the exercise of due care at the time of the accident, as well as that of the conduct of the motorman, was for the jury, and that the order of the presiding judge in directing a verdict for the defendant in each case was erroneous. In support of their contention they rely upon the testimony of the plaintiff Adams that she thought she had time to cross and that she spoke to Miss Walsh to that effect. This evidence does not necessarily require the submission of that question to the jury. It is for this court to determine as matter of law whether there is evidence suffi-- cient to warrant a finding that the conduct of the plaintiffs was· that of a reasonably careful and prudent person under all the circumstances. As was said by this court in *Jeddrey* v. *Boston & Northern Street Railway*, 198 Mass. 232, 235, "The real question, however, is what a reasonably prudent and cautious man, exercising his faculties for his protection, would have done under all the circumstances, and not what the plaintiff thought, although the result of his deliberate judgment then formed may throw some light upon the subject."

The plaintiffs further contend that the evidence, which tended to show that the car slowly approached the crossing and that then the motorman released his brakes and increased the speed of the car, was evidence of negligence on his part and was for the jury; also that it was competent as bearing upon the conduct of the plaintiff Adams and her companion in attempting to cross the outbound track. The cases relied on by the plaintiffs do not support this contention.

We have carefully considered all the evidence in the light most favorable to the plaintiffs, as we are bound to do, and we cannot escape the conclusion that these young women undertook to cross the outbound track to board the inbound car without taking any precautions whatever for their safety, except as they looked and saw the outbound car when it was one hundred and fifty feet away. Apparently they paid no further attention to it, although

the plaintiff Adams testified that she supposed it was coming at the same rate of speed that the cars on that street always or usually were run; that she knew it was the main thoroughfare for express 'cars that ran between Boston and Worcester; and that they were in the habit of proceeding along this street at a very rapid rate. The car that struck them must have been in plain sight up to the time of the accident. From the time they first saw it they continued to walk toward it, partially facing it, up to the time they were struck by it. From the evidence it appeared that they never reached the outbound track, but came into collision with the side of the car at a point less than seven feet from the forward end, exclusive of the fender. What measures, if any, were taken by them for their safety immediately before they were struck does not appear. So far as there is any evidence on this question it falls far short of due care on their part. The case at bar is governed by such cases as *O'Brien* v. *Boston Elevated Railway*, 217 Mass. 130; *Plympton* v. *Boston Elevated Railway*, 217 Mass. 137; *Morse* v. *Boston Elevated Railway*, 216 Mass. 579; *Stone* v. *Boston Elevated Railway*, 211 Mass. 365; *Mathes* v. *Lowell, Lawrence & Haverhill Street Railway*, 177 Mass. 416, and is to be distinguished from such cases as *Albee* v. *Boston Elevated Railway*, 209 Mass. 6; *Lunderkin* v. *Boston Elevated Railway*, 211 Mass. 144; *O'Toole* v. *Boston Elevated Railway*, 211 Mass. 517, and the other cases relied on by the plaintiffs.

There was evidence that no gong or bell was sounded as the car approached Hammond Street; but this is immaterial, as it could not have affected the plaintiffs' conduct, since they already had seen it and it was in plain sight all the time as they came to the track on which it was running. *Casey* v. *Boston Elevated Railway*, 197 Mass. 440.

While the consequences of this accident were most serious, we are impelled to hold that the jury would not have been warranted in finding that either woman was in the exercise of due care. This conclusion renders it unnecessary to consider whether there was evidence that the motorman was negligent. The result is that in each case the entry must be

*Exceptions overruled.*

*T. W. Proctor & G. W. Estabrook*, for the plaintiffs.

*P. R. Blackmur*, for the defendant.