WILLIS F. GRANT *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   November 9, 1917. — January 7, 1918.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence,* Plaintiff's due care, In use of highway, Street railway. *Practice, Civil,* Waiver of right given by statute. *Waiver.*

Where the trial of an action of tort, against a street railway company for personal injuries, received after St. 1914, c. 553, went into effect and resulting from the plaintiff being run into in the night time by a street car of the defendant as he was crossing a highway at a cross walk lighted by street lights, was tried on the footing of an action for injuries received before that statute went into effect, and there was evidence warranting, among other findings, findings that the plaintiff as he approached the defendant's tracks was conscious of his danger and

had his mind actively directed to its avoidance, that he looked in both directions for approaching cars and saw none, that, until he was within fifteen feet from the track, his view in the direction from which the car that struck him came was obscured by a team and that until it was too late to avoid the accident he did not look again in that direction because he was required to pick his way with care over the cross walk owing to its being made treacherous by small stones and gravel placed there during street repairs, the question of his due care is for the jury.

At the same trial there was evidence tending to show that the defendant's rules required the motorman to use extra care in passing excavations near a track such as were shown to exist in this case; that he saw the plaintiff when the car was seventy-five feet from the cross walk and the plaintiff was fifteen feet from the street car rail, walking slowly; that the motorman started to slow up, that the plaintiff went more slowly when within four or five feet of the rail and that then the motorman put on speed and "took a chance to slow up" and stop the car if the plaintiff kept on going; and that the car was going at the rate of five miles an hour and could have been stopped within twenty-five or thirty feet. *Held,* that the question of the negligence of the motorman was for the jury.

In this action for personal injuries received after St. 1914, c. 553, went into effect, where the plaintiff attempted to waive the provisions of that statute and consented to the judge charging the jury that the statute put upon the defendant only the burden of going forward and did not disturb nor change the burden of proof, the jury found that the plaintiff was in the exercise of due care, and this court *stated* that the question, whether such a waiver by the plaintiff could be made, had become immaterial.

TORT for personal injuries received on September 19, 1914, when the plaintiff was struck by an electric street car operated by the defendant as he was crossing Tremont Street toward Waltham Street in Boston. Writ dated April 22, 1915.

In the Superior Court the case was tried before *Hall,* J. The material evidence is described in the opinion. At the close of the evidence the defendant presented a motion in writing that a verdict be ordered for the defendant. The motion was denied.

The defendant also presented, among others, requests for the following rulings:

"If it appears from the testimony of the plaintiff himself that he was not in the exercise of due care at the time of and immediately preceding the accident, then he cannot recover."

.St. 1914, c. 553, "creates no affirmative evidence of the plaintiff's due care."

If St. 1914, c. 553, "by its terms creates a presumption of the fact of the plaintiff's due care, it is contrary to art. 14 of the Amendments to the Constitution of. the United States, and therefore unconstitutional and void."

If St. 1914, c. 553, "by its terms creates a presumption of the fact of the plaintiff's due care, it is contrary to art. 10 of the Declaration of Rights and is therefore unconstitutional and void."

At a colloquy between the trial judge and counsel the judge stated that he should refuse to give the foregoing rulings and would save the defendant's exceptions. Rather than have the defendant's exceptions saved to such refusal, the plaintiff's attorney then consented that the judge should charge the jury as hereinafter described and the defendant waived its exceptions to the refusal of the judge to give the foregoing rulings.

The defendant also asked for the following rulings, which were refused:

"1. Upon all the evidence in the case the plaintiff is not entitled to recover.

"2. Upon all the evidence in the case there is no evidence that the plaintiff was in the exercise of due care, and therefore he cannot recover.

"3. Upon all the evidence in the case there is no evidence of any negligence of the defendant's agents or servants, and therefore the plaintiff cannot recover."

"5. The testimony of the plaintiff, if believed, shows as a matter of law that he was not in the exercise of due care."

The judge, at the close of that part of his charge relating to the plaintiff's due care, instructed the jury as follows:

"It is agreed for the purposes of this case that I may instruct you that the recent statute which says that a plaintiff shall be presumed to be in the exercise of due care puts upon the defendant only the burden of going forward, and does not disturb nor change the burden of proof, and in giving you that as the law for the purposes of this case by agreement, you see now it becomes very important for you to determine whether or not upon all the evidence in this case Mr. Grant has sustained the burden of showing to you that he was in the exercise of such care, and his carelessness didn't contribute to this accident at all."

The jury found for the plaintiff in the sum of $2,500. The defendant alleged exceptions.

*E. P. Saltonstall,* for the defendant.

*C. H. Donahue,* (*W. T. Atwood* with him,) for the plaintiff.

PIERCE, J. This is an action of tort to recover for personal injuries received by the plaintiff on September 19, 1914. Upon the footing of an action arising and tried before St. 1914, c. 553, at the close of the evidence the defendant in writing moved the court to rule that "upon all the evidence the plaintiff was not entitled to recover." This the court refused to do and the defendant's exception to this refusal was duly saved.

The jury would have been warranted in finding the substantial and material facts to be as follows: The plaintiff was fifty-three years of age and in the full possession of his faculties, both sight and hearing. On the evening of the accident he was returning from the Boston Public Library to his home and was crossing Tremont Street from an "island" on its northerly side to Waltham Street on its southerly side, on the westerly or out of town cross walk. He was struck by an outbound car just as he stepped across the first rail of the outbound track. It was night time and dark but the street lights were lighted and the stores in the vicinity were opened and lighted up. The cross walk measured seventy feet from curb to curb. From the curbing of the "island" to the first rail of the outbound track, and place of the accident, the distance is thirty-one and one half feet.

At the time of the accident, the surface of Tremont Street between the outbound track and the "island" had been removed for repaving on both sides of the cross walk, but more on the right than on the left. The flagstones of the cross walk remained in place. The cross walk was about five feet in width, and on its surface there were stones and dirt and gravel which had come from adjoining piles of gravel. The paving stones, which had been taken up, were piled along the rail and also near the curb of the "island." There were wooden horses, parallel with the cross walk near the track, with red lights on them, and also, wooden horses near and parallel with the track on either side of the cross walk. On the "island" near the intown or easterly cross walk from Waltham Street, was a watering trough for horses, which was thirty-five feet east of the westerly cross walk. At the time of the accident there was a two-horse covered team drawn up toward and headed in the direction of the watering trough. On the "island" there was a police signal box twelve and one half feet west of the westerly cross walk. In the daytime a person standing on the

curbing of the "island" in front of the cross walk could see in the direction of Boston at least five hundred feet and in a westerly direction toward Roxbury about three thousand feet.

The plaintiff testified: "As I stepped on the cross walk I looked down toward Boston, at my left. And after looking down there. carefully I looked the other way. . . . I next looked toward — to my right after I had stepped a little further and I saw no car coming from that direction, and I walked along and kept walking toward the track on the cross walk and when I got about half way across I looked again toward Boston and saw no cars, and then as I walked along further I looked in the other direction and of course I had to pick my way along to avoid stepping on anything on the cross walk, and as I reached the other track I was looking in the direction away from Boston." He further testified that he "had to look a little more carefully on account of looking over those red lights, . . . they were a little dazzling. . . . I had to watch my step to avoid stepping on those little stones and things. It took some of my attention. . . . I reached the track and had just stepped across". the first rail "with one foot and I heard the gong strike of the electric car at my left and I turned quickly toward — facing the car, and tried to jump back, but it was on me before I could get back. The car struck me before.I could get out of the way." He further testified, that "when he was leaving the curb or about there he saw a large team drawn up toward the watering trough;" that the team was between him and the outbound track; that he could not see down the track much beyond the team; that when he looked toward Boston the second time, then being about fifteen feet from the nearest rail, he could see quite a long way, nearly down to Hanson Street; that he did not see any car; that the track was all free and clear so far as he could see, down about one hundred and fifty feet; that as he looked he was walking toward the track at the rate of perhaps two and one half miles an hour; that after coming out from behind the team "he had as clear a view as you could have at night of the rail down toward Boston" and "during the time he was passing over that ten feet he did not look toward Boston as he was looking in the other direction for inbound cars." He then said, that his reason for not looking again was that the tracks were clear when he was within fifteen feet of the rail, that he had to

watch his steps because of the stones and gravel on the cross walk and believed he had plenty of time to get across before any car could reach him.

It is the contention of the defendant that had the plaintiff looked toward Boston at any time when he was within ten feet of the rail, he would have seen the car in season to have avoided it; and that not to have seen it and not to have looked were equally acts of negligence which required a ruling of want of due care, and cites *Fitzgerald* v. *Boston Elevated Railway*, 194 Mass. 242, *Beirne* v. *Lawrence & Methuen Street Railway*, 197 Mass. 173, *Willis* v. *Boston & Northern Street Railway*, 202 Mass. 463, *Collins* v. *Boston Elevated Railway*, 218 Mass. 284.

While the question is close, we think the fact that the defendant was conscious of his danger and had his mind actively directed to the avoidance of harm, the fact that he could be seen by the motorman as he came out from behind the team, the fact that his attention was required to guard his steps while passing over the cross walk made treacherous by the presence thereon of small stones and gravel, and all the other circumstances of time and place, distinguish the case at bar and require that the issue of the due care be left to the consideration of the jury. *Lunderkin* v. *Boston Elevated Railway*, 211 Mass. 144. *O'Toole* v. *Boston Elevated Railway*, 211 Mass. 517. *Foster* v. *Boston Elevated Railway*, 214 Mass. 61.

The request to rule that there was no evidence of any negligence of the defendant's agents and servants could not have been given properly. The motorman testified that the rules required extra care in passing excavations near the track; that he saw the plaintiff when the car was seventy-five feet away from the cross walk; that the plaintiff was fifteen feet from the rail, moving slowly; that he (the motorman) started to slow up; that the plaintiff moved more slowly when within four or five feet of the rail; that he (the motorman) then put on speed, that he "took a chance to slow up" and stop the car if the plaintiff kept on going; that the car was going at the rate of five miles an hour and could have been stopped within twenty-five or thirty feet.

As the jury found for the plaintiff upon the issue of his due care and the negligence of the defendant, it becomes immaterial to determine whether in an action arising after the St. 1914,

c. 553, as this action did, the plaintiff can waive the provisions of that statute and with the consent of the presiding judge and the defendant agree that the judge shall instruct the jury, "that the recent statute which says that a plaintiff shall be presumed to be in the exercise of due care puts upon the defendant only the burden of going forward, and does not disturb nor change the burden of proof."

*Exceptions overruled.*