FERNALD N. GOULD, administrator, *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.    May 19, 1931. — June 23, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & FIELD, JJ.

*Negligence*, Contributory, Street railway, In use of way, Causing death. *Evidence*, Presumptions and burden of proof.    *Conflict of Laws.*

Section 85 of G. L. c. 231 was applicable at the trial of an action of tort by an administrator in our Superior Court against a corporation operating a street railway to recover damages for the causing of the death of the plaintiff's intestate in New Hampshire under Public Statutes of New Hampshire, 1890, c. 191, §§ 8–13, inclusive, now Public Laws of New Hampshire, 1926, c. 302, §§ 9–14, inclusive.

At the trial of an action of the character above described, there was evidence that in a heavy snow storm in the evening of a day in November the intestate was in an automobile on a public way in New Hampshire on the seat at the right of the driver; that just before the accident the driver stopped the automobile to permit the intestate to get out to wipe snow from the windshield on the side in front of him; that, doing so, the intestate was near the rail of the street railway track, which was covered with four inches of snow; that the driver, seeing a street car of the defendant approaching from the front, shouted to the intestate, "look out for the car"; that lights on the street car were dimmed when it was about fifty feet from the automobile; that the street car was travelling at the rate of about twenty-five miles per hour and struck the intestate.    Conduct of the intestate was not otherwise shown by the evidence.    *Held*, that the presumption of due care, created by G. L. c. 231, § 85, was not overcome so that it could be ruled that as matter of law the defendant had sustained the burden of proving that the intestate was guilty of contributory negligence.

At the trial of the action above described, there was further evidence that the motorman of the street railway car saw the lights on the automobile when it was one hundred fifty to two hundred yards away, and first saw the automobile when about two hundred feet away; that, when about fifty feet away from the automobile, he

turned off an arc head light and "snapped on" a small incandescent light, by which, in the circumstances then existing, he could see ahead of him for a distance of thirty feet; and that when forty feet distant he increased his speed. *Held*, that there was evidence warranting a finding that negligence of the motorman caused the death of the intestate.

TORT, under Public Statutes of New Hampshire, 1890, c. 191, §§ 8–13, inclusive, now Public Laws of New Hampshire, 1926, c. 302, §§ 9–14, inclusive, to recover damages for the causing of the death of the plaintiff's intestate, James W. Gould.   Writ dated January 23, 1926.

In the Superior Court, the action was tried before *F. T. Hammond*, J.   Material evidence is stated in the opinion. At the close of the evidence, the judge ordered a verdict for the defendant and reported the action for determination by this court.

*R. B. Walsh*, for the plaintiff.

*M. J. Cohen*, for the defendant.

CARROLL, J.   The plaintiff, as administrator of the estate of James W. Gould, brought this action to recover damages for the death of his intestate under Public Statutes of New Hampshire, 1890, c. 191, §§ 8–13, inclusive, now Public Laws of New Hampshire, 1926, c. 302, §§ 9–14, inclusive.   It was alleged that the death was caused by the negligence of the defendant in the operation of one of its street cars on a trolley line between Manchester and Concord, New Hampshire.   The answer was a general denial and an allegation of contributory negligence.   The accident happened in the town of Hookset, New Hampshire, on November 29, 1924, at about 6 P.M.

The plaintiff and his intestate, who was the plaintiff's father, left Concord about five o'clock in the afternoon and travelled southerly by automobile, the plaintiff seated on the left operating the motor vehicle and his father on his right.   As they departed from Concord it was "snowing moderately"; as they proceeded "it was snowing quite heavy."   Soon after leaving Concord "they noticed a single line of street car tracks" along the westerly or right hand side of the highway.   As they came to a fork in the way,

the car tracks went to the right. The plaintiff continued "straight ahead" for about four miles beyond the fork in the road when the motor vehicle was brought to a stop "to allow the plaintiff's intestate to get out of the automobile to wipe the snow from that part of the windshield in front of him. . . . Just as the plaintiff's intestate got out . . . the plaintiff noticed an electric car approaching them from the south. He testified that he was quite surprised." He called to his father, "look out for the car"; he then drove to the left hand side of the road and later, on leaving the automobile, came to his father "lying face up in the middle of the road, his feet pointing toward and being about five feet from the car tracks" "directly opposite the point where his father had got out of the automobile." The intestate died on the way to the hospital.

It appeared that, about three hundred yards north of the place of the accident, the car tracks returned to the highway on which the plaintiff was travelling and continued southerly along the westerly side of the highway but within the limits of the highway. Three or four inches of snow had fallen, which covered the electric car tracks, so that the plaintiff did not know that the electric car tracks had returned to the highway, and "could not see" them. The snow had covered all traces of traffic and there was nothing to indicate to the plaintiff the limits of the highway except a gutter on the left and shrubs and a fence on the right.

The plaintiff testified that when he stopped his automobile "in his opinion it was so close to the inner rail that it would have been struck by the approaching electric car had he not changed its position"; that he first saw the approaching car "distant two hundred yards southerly"; that it was at this time his father alighted from the automobile and was standing beside the right hand front door of the automobile and at that time he called to his father, "look out"; that the street car was moving at the rate of twenty-five miles an hour. The plaintiff further testified that when he started the automobile the car was fifty or sixty feet distant and that it passed him "just as [he] commenced to move." On cross-examination the plaintiff

testified that as his intestate stood there, the witness saw the car six hundred feet away; that the car travelled seventy-five yards beyond the place of the accident before coming to a stop. The plaintiff also testified that there were marks over his father's right eye "as if he had come in contact with something." The engine of the automobile was running all the time, and its lights were lighted.

The motorman testified that he first saw the plaintiff's motor vehicle when he was about two hundred feet distant; that he first saw the lights on the automobile when it was one hundred fifty or two hundred yards away; that it was about four feet from the track so that the street car could pass it; that he reduced the speed of the car; that when about fifty feet away from the automobile, he turned off the arc headlight and "'snapped on' a small incandescent light, by which, under the circumstances then existing, he could see ahead of him for a distance of thirty feet"; that when he turned off the arc light he had reduced the speed to about eight or ten miles an hour. There was other evidence tending to corroborate the defendant.

The trial judge directed a verdict for the defendant and reported the case.

Although the accident occurred in New Hampshire, G. L. c. 231, § 85, which affects procedure, applies. *Levy* v. *Steiger*, 233 Mass. 600. The intestate therefore was presumed to be in the exercise of due care, and the burden was on the defendant to show his contributory negligence. *Mercier* v. *Union Street Railway*, 230 Mass. 397. The presumption of due care was not overcome so that it could be ruled that as matter of law the defendant has sustained the burden of proof. The conduct of the deceased is not fully disclosed. Whether he knew that a trolley car was approaching or knew the location of the track is not shown. He may or may not have heard his son say "look out" for the car. Whether he was in the act of wiping the windshield and whether he was facing toward the car or in an opposite direction does not clearly appear. He may not have known that the car was moving; he may have been dazzled by the search light and may not have known when it was

turned off whether the car was moving or the exact course it would take; it does not appear that he looked in the direction of the car. Considering all these circumstances, including the fact that it was snowing, and dark, his knowledge or want of knowledge of the highway and the presence or location of the car tracks, the question of the intestate's care was for the jury.

The negligence of the motorman was a fact to be passed on by the jury. The evidence was conflicting, but the jury could find that when the car was two hundred yards distant, the plaintiff stopped his motor vehicle, and the intestate alighted from the right hand side to wipe the windshield on his side; that the motor vehicle was so close to the inner rail that the car would strike it unless the automobile was moved; that when the automobile was started the street car was fifty or sixty feet away and it passed the plaintiff when the automobile began to move. The motorman admitted that he first saw the automobile move when the front end of the electric car was opposite the front end of the automobile; that with the arc light lighted he could see ahead two hundred feet; that when fifty feet away he turned off this light and snapped on the small incandescent light by which he could see only thirty feet.

If the jury believed the testimony of the plaintiff, his intestate was standing on the right of the automobile between it and the car tracks. The speed of the electric car was not reduced. If the motorman could see two hundred feet in front of him it could be found that he saw the intestate and did not stop his car, but continued until he passed beyond him, and if they so found they could find that the motorman was negligent. *Tierney* v. *Boston Elevated Railway*, 216 Mass. 283. *Austin* v. *Eastern Massachusetts Street Railway*, 269 Mass. 420. If the motorman did not see the deceased the jury could say that this was negligent; that under all the circumstances a proper degree of care would have shown to the motorman the presence of the intestate. The motorman admitted that when fifty feet away he turned off the arc light and turned on the incandescent light by which he could see only thirty feet; and when forty

feet distant he increased his speed.   The jury could decide on these facts that to increase the speed of the car in the darkness and storm, knowing what he did or should have known, was a careless act.

There was evidence to the contrary, which indicated that the intestate was in the rear of the automobile and stepped in front of or to the side of the street car without any knowledge of his presence on the part of the motorman; but the facts were for the jury, and we cannot say that they would not have believed the plaintiff.

Cases where an intending passenger stands on or near a car track when he knows the car is approaching, and is struck by it, are not applicable.   In *Williams* v. *Nahant & Lynn Street Railway*, 262 Mass. 66, *Olsen* v. *Boston & Maine Railroad*, 82 N. H. 120, and the cases relied on by the defendant, the facts are different from the facts in the case at bar.

In accordance with the report there is to be a new trial.

*So ordered.*