FERNALD N. GOULD, administrator, *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.     December 14, 1932. — February 20, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Negligence*, Contributory, Street railway, Causing death, In use of way. *Damages*, In tort. *Evidence*, Presumptions and burden of proof, Of speed.

At the trial of an action against a railroad corporation by an administrator under Pub. Laws of New Hampshire, c. 302, §§ 9–14, to recover damages for the death of his intestate, alleged to have been caused by the negligence of the defendant in the operation of a street car in a town in New Hampshire, there was evidence that after dark the decedent was riding beside his son, the plaintiff, in an automobile upon a snow covered highway; that neither of them had any knowledge of the fact that the street railway track extended along the right side of the highway at the place of the accident; that falling snow was obscuring the windshield and the decedent got out of the automobile to brush it off; that the son then saw the lights of an approaching street car, and, realizing that the tracks were there, warned the decedent and moved the automobile from the proximity of the track, and, after the street car passed, returned and found the decedent unconscious in circumstances warranting a conclusion that he had been struck by the street car. There was no evidence to show whether the deceased saw the approaching trolley car, nor to show whether he heard the warning given by the plaintiff to look out for the car, nor as to what he was doing at the time he was struck. *Held*, that by reason of the provisions of G. L. (Ter. Ed.) c. 231, § 85, the burden of proving contributory negligence of the decedent rested on the defendant; and the question, whether that burden had been sustained, was for the jury.

At the trial of the action above described, the motorman testified that he first saw the headlights of the automobile when he was a hundred yards or more from it; that when he was a little more than two hun-

dred feet away he learned that it had stopped; that he turned off his bright arc light fifty feet from the automobile, thus relying only on his incandescent light; and that he saw the decedent as the front end of the street car reached approximately the rear mudguard of the automobile and when the automobile began to move. There was evidence that the speed of the street car was twenty-five miles an hour and that its speed had not been reduced as it approached the automobile. *Held,* that the question, whether the motorman was negligent, was for the jury.

It was proper to permit the son to testify, at the trial above described, that as the street car came toward him it was travelling at a speed of twenty-five miles an hour.

Since Pub. Laws of New Hampshire, c. 302, § 12, provided that in an action for negligently causing death the earning capacity of the decedent might properly be considered as an element of damages, it was proper, at the trial of the action above described, to admit evidence that the decedent received at his employment additional wages for overtime work, such evidence being material on the issue of his earning capacity.

The administrator who brought the action above described was the son of the decedent, and was one of several witnesses at the trial; and it was *held,* that the trial judge properly refused to rule, "The plaintiff is bound by his testimony of the happening of the accident."

By reason of the provisions of Pub. Laws of New Hampshire, c. 302, § 12, it was proper to instruct the jury in the action above described that in assessing damages the living expenses of the decedent's wife while she was living with him were not to be considered in appraising the loss to the decedent's estate.

TORT.    Writ dated January 23, 1926.

The action previously was before this court upon a report by *F. T. Hammond,* J., after trial in the Superior Court, a verdict was ordered for the defendant. In a decision reported in 276 Mass. 114, this court ordered a new trial.

The second trial of the action was before *Williams,* J. Material evidence and exceptions saved by the defendant are described in the opinion. There was a verdict for the plaintiff in the sum of $3,792. The defendant alleged exceptions.

*J. M. Maloney,* (*F. F. O'Donnell & M. J. Cohen* with him,) for the defendant.

*R. B. Walsh,* for the plaintiff.

CROSBY, J.    This is an action of tort brought by the plaintiff as administrator of the estate of James W. Gould, to

recover damages for the death of his intestate, alleged to have been caused by the negligence of the defendant in the operation of one of its street cars in the town of Hookset, in the State of New Hampshire. The action is brought under Pub. Sts. of New Hampshire, c. 191, §§ 8-13, inclusive, now Pub. Laws of New Hampshire, c. 302, §§ 9-14, inclusive. The defendant's answer consists of a general denial and contributory negligence. The case was tried in the Superior Court to a jury. There was a verdict for the plaintiff. The case is before this court on exceptions to the denial of the defendant's motion for a directed verdict, to the admission of certain evidence, to the refusal of the judge to give a certain instruction, and to a part of the charge.

The plaintiff testified in his direct examination in substance as follows: On November 29, 1924, he and his father, the intestate, left Concord about five o'clock in the afternoon in an automobile and travelled in a southerly direction. When he left Concord it was "snowing moderately" and was dark. They followed an electric car until they came to a fork in the road, the car turned to the right, and they went straight ahead and travelled down into Hookset. The windshield became clogged and the plaintiff drove the automobile to the right side of the road so that his father might get out and clean the windshield as it was then snowing very heavily. Just as his father stepped out the plaintiff saw an electric car approaching and he warned his father, saying, "Look out for the car." He then proceeded to move the automobile to the opposite side of the road because it looked as if he were in the way of the car. He paused for a few seconds and when his father did not come to him he got out and found him lying in the street. Two or three inches of snow had fallen which had covered the highway, and he could not see any street car tracks at the place where he came to a stop and did not know they were there; he saw no signs of previous traffic in the highway. The automobile he was driving had a left hand drive. His father had been seated on the front seat on the plaintiff's right. He pulled over to the right side of the road when he stopped so that if there was any traffic there would be room for it to pass. He left his motor running all

the time.  Both his headlights were lighted.  It was dark. After he stopped the automobile and just as his father stepped out he saw the trolley.car approaching.  Before his father stepped out of the automobile he had to unlatch the curtains and it took a little time to release them.  When he first saw the trolley approaching from the opposite direction his father was standing beside the right hand front door, and he warned him immediately and then, as soon as he could get the engine running fast enough to start the car, he pulled his automobile diagonally across the highway.  At the time he started to move his father was standing beside the right hand door.  That was the last time he saw him until he went back and found him lying in the highway.  The trolley car passed the point where he had originally stopped his automobile just as he got the automobile moving and it was about its length beyond this point.  He could not tell how long a time elapsed between the time when the trolley first came in sight, and when it passed the point where his automobile was parked originally; he "barely had time to get the car moving."  The trolley car was travelling about twenty-five miles an hour.  He did not notice any change in its speed at any time after he first saw it.  He did not hear any gong or whistle from it.  He did not know whether his automobile was on the car tracks when he first brought it to a stop. When he went back and found his father lying in the road, his feet were toward the tracks, his body was almost in the middle of the highway; he was groaning and unconscious and never regained consciousness, and died before reaching the hospital in Manchester.  The plaintiff further testified that near the place where the accident occurred he noticed a farm house a little ahead on the right, and a gas station beyond, northerly, on the other side of the street; that he saw no other buildings near the place of the accident; that when he stopped his automobile there were lights in the farm house and in the gas station.  He further testified that about four years after the accident he went to the place of the accident and made certain measurements; that conditions were the same as they were the night of the accident; the width of the highway is twenty-eight feet, and constructed of macadam,

which is eighteen feet wide beginning at a point two feet
from the inner rail, the two feet-between the rail and the
macadam being covered with gravel; that the inner rail is
flush with the top of the highway and the space between the
rails is covered with gravel; that southerly from the place
of the accident the highway is approximately straight and
level for two hundred yards; that the distance from the place
of the accident southerly to the farm house is about forty-
two yards and to the gasoline station northerly about
seventy-five yards; that he first saw the trolley car when it
came into view over the hill approximately two hundred
yards from the place where his car was parked; that he saw
the headlight on the car and saw either the motorman or
conductor that night; that the car came to a stop in front
of the gasoline station; that the next day he noticed a black
and blue bruise mark on his father's forehead, just over his
right eye, which was not there before the accident; that
after the accident the conductor showed the plaintiff a mark
on the side of the car, the mark was just behind the vestibule
door on the side next to the travelled part of the highway.
On cross-examination the plaintiff testified that he did not
see the accident, but afterwards saw the mark on the side of
the car above referred to; that at the time of the accident
there were two or three inches of snow on the road, but he
did not see a rail or any macadam or gravel; that as he
travelled south after the car he had followed turned to the
right off the highway he assumed there were then no tracks
along the highway; that when he turned off to the left and
stopped there was ample room for the street car to pass him,
and that it did pass without hitting his automobile but that
he barely got out of the way; that he was certain his father
did not go in front of, or behind, the car; that the last time
he saw his father, the latter had just got onto the ground.

One Raymond, a witness called by the plaintiff, testified
that he did not see the accident, but saw people gathered at a
point between eighty and one hundred yards south of the gas
station and probably about forty-five yards north of the
farm house; that the electric car came to a stop directly
opposite the gas station; that it was snowing hard and about

three inches of snow had fallen; that the car tracks were not visible because covered with snow.

The motorman testified that he was probably one hundred yards or a little more from the automobile when he first saw its headlights; that when he first saw it he thought it was coming toward him; that when he was a little over two hundred feet from it he learned that it was stationary; that with his arc light on he could see ahead of him a distance of two hundred feet; that he thought it was close to the tracks, and he reduced the speed of his car; that he slowed down gradually as he had plenty of time, within a distance of about the length of a car from the automobile which would be almost forty-four feet; that when he saw the deceased was three or four feet from the rail he sounded two short blasts on the whistle and started to pull by the automobile and slightly increased his speed; that up to about the length of a car away from the automobile was the first time he decided he could clear it; that when he was about fifty feet from the automobile he turned off the headlight; that he then had only his incandescent light; that he saw the deceased just as the front end of the trolley car reached a point near the rear mudguard on the automobile; that the automobile had started and had travelled not over three feet when the electric car passed it; that he had not seen Gould before that time, and that after passing him he brought his car to a stop and saw him lying at the side of the road five or six feet from the track. There was other evidence which tended to corroborate the motorman.

It could have been found that, owing to the darkness and the snow upon the track, neither the plaintiff nor his father had any knowledge of the fact that the street railway track extended along the side of the highway at the place of the accident; that as soon as the car appeared in sight of the plaintiff he moved his automobile a sufficient distance from the track to allow the street car to pass. There is no evidence to show whether the deceased saw the approaching trolley car. Nor is there any evidence to show whether he heard the warning given by the plaintiff to look out for the car. What he was doing at the time he

was struck does not appear.  Before the enactment of St. 1914, c. 553, now G. L. (Ter. Ed.) c. 231, § 85, the action could not have been sustained, as the evidence was not sufficient to authorize a finding that the intestate was actively and actually in the exercise of due care, but under the statute the burden of proving contributory negligence rested on the defendant.  Whether that burden had been sustained was for the jury.  *Mercier* v. *Union Street Railway,* 230 Mass. 397, 403.  *Hart* v. *Morris & Co.* 259 Mass. 211.

The question whether the motorman was negligent was properly submitted to the jury.  There was evidence that when the plaintiff first stopped his automobile and the deceased alighted to wipe the windshield the electric car was two hundred yards away; that at that time the automobile was so close to the inner rail that the plaintiff moved it to the opposite side of the road.  The motorman testified that he first saw the headlights of the automobile when he was a hundred yards or more from it; that when he was a little more than two hundred feet away he learned that it had stopped, and he turned off his headlight fifty feet from the automobile.  He admitted he saw the deceased as the front end of the trolley car reached approximately the rear mudguard of the automobile and when the latter began to move.  There was evidence that the speed of the car was not reduced as it passed the automobile, but that the car was travelling at a speed of about twenty-five miles an hour.  The jury could have found that he should have reduced the speed of his car, and if necessary come to a full stop in time to have avoided striking the deceased when the motorman, as he testified, saw this automobile was stopped near the track two hundred feet ahead of him.  Whether he saw the deceased, or in the exercise of reasonable care ought to have seen him in time to have avoided striking him, was a question of fact to be decided by the jury.  *Austin* v. *Eastern Massachusetts Street Railway,* 269 Mass. 420, 423, and cases cited.

At a previous trial of this case upon similar evidence as is here presented it was held by this court that the case

should have been submitted to the jury. *Gould* v. *Boston & Maine Railroad*, 276 Mass. 114. Although the testimony at the last trial was not in all respects the same as that presented at the previous trial, it was substantially the same. It follows that a verdict could not properly have been directed for the defendant. The case is to be considered upon the evidence now before us.

The plaintiff testified, subject to the defendant's exception, that as the trolley car came toward him it was travelling at a speed of twenty-five miles an hour. The evidence was properly admitted and the exception must be overruled. *Johnston* v. *Bay State Street Railway*, 222 Mass. 583. *Creedon* v. *Galvin*, 226 Mass. 140, 143. *Mahoney* v. *Gooch*, 246 Mass. 567, 569. The plaintiff also testified that the deceased had told him that he obtained time and a quarter for his overtime from his employer. The Pub. Sts. of New Hampshire, c. 191, § 12 (Pub. Laws, c. 302, § 12), provides that in an action for negligently causing death the earning capacity of the decedent may properly be considered as an element of damages. The evidence that the decedent received an additional amount for overtime work was material on the issue of his earning capacity. No error appears in the admission of this testimony. See *Dillon* v. *Hudson, Pelham & Salem Electric Railway*, 73 N. H. 367; *Morrell* v. *Gobeil*, 84 N. H. 150.

The defendant excepted to the refusal of the judge to give the following instruction: "The plaintiff is bound by his testimony of the happening of the accident." This instruction could not properly have been given. This testimony of the plaintiff was to be considered by the jury together with the testimony of the other witnesses, from which it was the duty of the jury to find the facts in issue between the parties upon the entire evidence and reasonable inferences to be drawn therefrom. The cases brought to recover for personal injuries, cited by the defendant, which hold that when a plaintiff testifies to facts which plainly show that he was not in the exercise of due care he cannot recover, *Will* v. *Boston Elevated Railway*, 247 Mass. 250, 251, *Fortune* v. *New York, New Haven & Hartford*

*Railroad,* 271 Mass. 101, 104, *Anthony* v. *Boston & Maine Railroad,* 276 Mass. 392, are not applicable to the testimony of the plaintiff in the present case.

The trial judge instructed the jury upon the question of damages under the death statute of New Hampshire (Pub. Laws, c. 302, § 12), that in assessing damages the living expenses of the decedent's wife while she was living with him were not to be considered in appraising the loss to the decedent's estate. The defendant's exception to this instruction cannot be sustained. The instruction was in accordance with the terms of the statute, and in conformity to the decisions of the Supreme Court of New Hampshire. *Imbriani* v. *Anderson,* 76 N. H. 491. *Morrell* v. *Gobeil,* 84 N. H. 150.

As no error of law appears in the conduct of the trial, the entry must be

*Exceptions overruled.*